# Wytheville.

## NEWBERRY & ALS. V. STUART.

### JUNE 19th, 1890.

1. CHANCERY PRACTICE—*Commissioner's report—Interlocutory decree.*—It is well settled that whether interlocutory decree confirming commissioner's report shall be modified, or wholly set aside, or not, is generally a matter resting in the Chancellor's discretion, to be exercised according to the particular circumstances of the case.
2. IDEM—*Petition and affidavit.*—When such decree has been rendered on the merits, application to rehear it in order to introduce new evidence must be made by petition and affidavit that the newly discovered evidence could not have been produced by reasonable diligence. *Trevelyan* v. *Lofft,* 83 Va., 141.
3. IDEM—*Case at bar.*—Here there was no absolute adjudication of the appellee's claims until the decree complained of, and the above rule has no application.

Appeal from decree of circuit court of Wythe county rendered March 7th, 1889, in a chancery cause wherein the appellants, James Early, B. J. Perry, William J. Roper and John C. Roper, executors of Robert Roper, deceased, were complainants, and Wm. A. Stuart, Joseph F. Kent, individually and as executor of Miss Jane E. Brown, and others were defendants. Opinion states the case.

*D. S. Peirce, Jos. W. Caldwell,* and *C. B. Thomas,* for the appellants.

*James A. Walker,* for the appellees.

LEWIS, P., delivered the opinion of the court.

The suit, so far as the matters involved in this appeal are concerned, is virtually a proceeding to enforce the contract of the 14th of September, 1881, into which the appellee, W. A. Stuart, entered with Caldwell, trustee, for the purchase of the Lick mountain land. By the terms of that contract, Stuart agreed to give for the land $12,500, payable in one, two and three years, with interest from date, with the understanding that in making the payments, he was to be credited by all amounts paid by him for the late Colonel Kent, as endorser or surety on the debts mentioned in the deed of trust. This sale, which was privately made, was duly reported to the court and confirmed. The amount, however, of Colonel Kent's indebtedness to Stuart was not specified.

Subsequently Commissioner Holbrook returned "a partial report" to the court, accompanied by a schedule purporting to contain a list of Colonel Kent's debts paramount to and secured by the deed of trust, in which Stuart's claims, above referred to, were put at $9,431, which report was confirmed.

It appears, however, that this statement or schedule was not made up by the commissioner, but by Caldwell, the trustee, and not from any information furnished by Stuart; nor was he applied to for information on the subject, or notified that the account of debts would be taken. Moreover, the report of the commissioner not only purported to be nothing more than a partial report, but, although confirmed, seems to have been subsequently so regarded.

Thus, in Commissioner Bolling's report, dated March 11th, 1886, nearly two years after the confirmation of Commissioner Holbrook's report relative to the sale of the Lick mountain land, it was said: "The fund has been left in the hands of Mr. Stuart, by the trustee to pay any liability to him on the part of the trust fund as creditor or surety, and until *this is settled* between Mr. Stuart and the trustee, it is impossible to report how the account stands between them."

This report was confirmed without exception thereto being taken by any one, thus showing, or tending to show, that the statement returned with his report by Commissioner Holbrook, putting Stuart's claims at the exact sum of $9,431 was not regarded as a final one. So, also, in March, 1884, Caldwell, the trustee, reported, with · the apparent acquiescence of all parties, that Stuart was a purchaser to "about the amount of his own debt"; in other words, that "his own debt" was about the amount of his purchase, which was, as already said, $12,500. Subsequently, Commissioner Bolling reported that Stuart's claims amounted to $170 36 more than the amount of his purchase, and this report was confirmed by the decree complained of.

It is contended by the appellants, that inasmuch as there was no exception by Stuart to Commissioner Holbrook's report, he is bound by the decree confirming it. In other words, that he ought to be precluded by reason of his negligence and inattention from now contesting the accuracy of that report.

We think that what has already been said is a sufficient answer to this contention, for it is well-settled that whether an interlocutory decree confirming a commissioner's report shall be modified or wholly set aside, or not, is generally a matter resting in the sound discretion of the chancellor, to be exercised according to the particular circumstances of each case. *Kendrick* v. *Whitney*, 28 Gratt., 646; *Fultz* v. *Brightwell*, 77 Va., 742; 1 Bart. Ch. Pr., 339. When such a decree has been fully and fairly rendered on the merits, and an application is made to rehear it for the purpose of introducing new evidence, then the appropriate mode of applying is by petition, accompanied by an affidavit that the newly-discovered evidence could not have been produced with the use of reasonable diligence in time to have been used when the decree was pronounced. *Trerilyan's Adm'r* v. *Lofft*, 83 Va., 141. This is the general rule, and is not disputed. But the present is not such a case. Here there was no absolute adjudication of the appellee's

claims until the decree complained of was rendered. And in view of all the circumstances to which we have alluded, we think that decree is right, not only in modifying the decree confirming Commissioner Holbrook's report, but in confirming Commissioner Bolling's report in relation to the amount of the appellee's claims. That report is in accordance with the contracts of the parties, and the decree confirming it must be affirmed.

DECREE AFFIRMED.