# Staunton

J. POWELL ROYALL, RECEIVER v. BETTIE J. PETERS, ET ALS.

September 9, 1942.

Record No. 2557.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*James W. Harman*, for the appellant.

*Carl C. Gillespie*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This is an appeal from a decree entered on August 20, 1941, in the consolidated chancery causes of *J. D. Peery*,

*et als.* v. *E. King Crockett, Trustee, et als.* and *E. King Crockett, Trustee, et als.* v. *Bettie J. Peters, et als.,* which decree dismissed appellant's petition to rehear a former decree entered in the same causes on December 20, 1940, and confirmed a commissioner's report disclosing a shortage in the receivership accounts of the appellant.

By separate decrees entered on September 18, 1924, in the above styled causes before consolidation, R. O. Crockett, who was the receiver of the court in each case, was allowed to resign, and J. Powell Royall was appointed receiver in his place and stead. The former receiver turned over to the appellant the sum of $2,565.24 in one case and the sum of $6,715.41 in the other, evidenced by certain securities and currency, and took the receipt of the new receiver therefor. In each decree it was expressly ordered and provided that Royall, as receiver, should deduct and retain a commission of 2½% as his full compensation on the funds received; invest the residue at 6% per annum, collecting the interest thereon annually; and pay the interest annually to Bettie J. Peters, during her life, after deducting therefrom his commission of 5% and the taxes on the funds in his hands.

The funds involved were realized from sales, in the foregoing suits, of real estate belonging to the infant children of Mrs. Peters, which they acquired under the will of their grandfather, subject to the life estate of their mother.

Royall, a learned, able, and experienced attorney at law, accepted the trust; gave the bond required; took possession of the funds; and entered upon the performance of his duties.

Royall made and filed his first report as receiver on March 15, 1929, before one of the commissioners in chancery of the court, covering the several years prior thereto, which was, by decree on the same date, ratified, approved and confirmed. This decree was, by another decree entered without objection, set aside on April 15, 1929; and Royall, on that day, made and filed another report of settlement of his accounts with the same commissioner.

The report of April 15th showed that he had in his hands as of March 15, 1929, $9,048.64, principal, and $136.59, interest. It was, by decree, ratified, approved and confirmed and duly recorded.

Royall made his next report on February 15, 1934, for the period from March 15, 1929, to January 15, 1934. In the report for each of the several years from 1929 to 1934, he charged himself with the principal fund of $9,048.64.

On July 4, 1930, an additional asset came into his hands in the sum of $3,333.33. Thereafter he carried the corpus as $12,381.97 during the succeeding years. He charged himself with interest at 6% on that amount during each of these years. As of January 15, 1934, he disclosed interest due Mrs. Peters in the sum of $278.53.

In the several reports of the settlement of his accounts in 1935, 1936 and 1938, he listed the principal of the estate as $12,381.97. In each settlement he charged himself with interest at 6% per annum in accordance with the terms of the decrees of September 18, 1924. Each report was duly confirmed and approved by the trial court without exception.

All of these settlements of the receiver's accounts were made out in his office, at his direction, and from information furnished by him. He drew the decrees which ratified and confirmed them.

On January 13, 1940, the appellant filed a petition alleging that upon reviewing the settlements of his accounts, he found that he had, by mistake, overpaid Mrs. Peters the amount of interest which was due her and in doing so, he had encroached upon the corpus of the estate. He averred that, under certain circumstances and conditions existing during an economic depression, it had been difficult to invest safely the funds at 6% interest, and that he had charged himself with more interest than he had collected. He prayed the court to refer the matter to a commissioner in chancery, with direction to review the settlements of the receivership account; to have all mistakes and errors corrected; to report the true amount, if any, of overpayments; to relieve him from the charge of any interest not earned when

the funds were uninvested; and to suspend any further payment of interest to Mrs. Peters until such time as the amount she had been overpaid should have been restored to the principal by interest subsequently earned.

The trial court, on May 1, 1940, referred the matter to A. S. Higginbotham, commissioner in chancery, for an accounting and settlement of the estate in the hands of the receiver, with direction to report to the court "the correct and true amount of all overpayments, if any, made by the said receiver to Bettie J. Peters; and correct any and all mistakes, if any, which have been made in the previous settlements of said receiver with the Commissioner of Accounts of this Court; and to make any and all adjustments that are proper in said account; * * * ."

Pursuant to this decree, Higginbotham, commissioner, made his report on October 20, 1940, in which he allowed the receiver credit for all interest which the funds in his hands failed to earn by reason of being uninvested from the period beginning September 18, 1924 and ending January 15, 1940. The report, as of the latter date, charged the receiver with a principal fund of $12,090.33 and with interest amounting to $497.67. Mrs. Peters filed several exceptions; the appellant none.

The court, on December 20, 1940, approved, ratified and confirmed the report in all respects except that it increased the amount of the interest in the sum of $94.97. The receiver excepted solely to so much of the ruling of the court as increased the amount of the interest.

The above decree specifically charged the receiver with $12,090.33 principal and $592.64 interest and directed the payment of interest to Mrs. Peters. The costs of the proceeding were directed to be paid one-half out of the principal and one-half by Mrs. Peters. It was further decreed that the receiver should make his future settlements of accounts before Commissioner Higginbotham annually, and submit with each settlement a list of the assets held in his hands, evidencing the principal funds charged to him.

Pursuant to the direction of the court, the commissioner filed a report on March 20, 1941, settling the accounts of the receiver for the period from January 15, 1940, to January 15, 1941, and listed therewith an itemized statement of the assets in the hands of Royall. This report charged the receiver with a shortage of $785.81 in the corpus of the estate and $408.14 interest.

The receiver excepted to the report on the ground that it was incomplete, especially as to the shortage in the corpus, and objected to its confirmation until he could be further heard.

On April 8, 1941, the appellant filed a second petition in which he alleged that he had erroneously overpaid Mrs. Peters the amount of interest due her by using a portion of the principal; that the error was due to the charge against him of 6% upon the entire principal fund rather than for the amount of interest annually received from funds invested; and that by reason of the depletion of the principal fund, its earning power had been reduced thereby creating the shortage.

He further averred that the decrees of September 18, 1924, were impossible of performance and imposed an unreasonable burden upon him; that it was difficult and impossible to make safe loans earning 6% interest; that he did not realize that he was encroaching upon the principal fund; and did not know that a shortage in the funds existed until the last report of the commissioner.

He prayed that the cause be again referred to the commissioner to ascertain what amount had been overpaid to Mrs. Peters in excess of the amount of interest collected by him on funds invested; that he be given credit for the reduced earning power of the principal brought about by such overpayments; and that all other proper adjustments in his accounts be made. This petition was amended on May 29, 1941, with the prayer that the cause be reheard and the decrees of September 18, 1924, and December 20, 1940, be corrected to provide for a credit to the receiver of funds erroneously paid to Mrs. Peters.

To this petition and its amendment, Mrs. Peters filed a plea of former adjudication, which the court overruled. She then answered, denying that she had been paid more than she was entitled to receive, and charged the receiver with responsibility for the principal amount of the funds shown in the commissioner's report.

By decree of March 29, 1941, the appellant was directed to present to the court, on or before July 1, 1941, a statement, in writing, of his accounts as receiver showing the dates and amounts of any payments made by him to Mrs. Peters out of the principal funds, together with such other evidence as he deemed advisable to substantiate his claim that the shortage in the funds was due to overpayments of interest out of the principal.

The receiver was given permission to introduce either written or oral evidence upon the issues raised by his petition and the answer of Mrs. Peters.

On July 14, 1941, the receiver filed a detailed written statement of his transactions from 1924 to July 1, 1941. To this report Mrs. Peters filed exceptions.

The evidence of the defendant, by agreement of counsel, was taken in open court on August 12, 1941.

The record shows that the receiver did not segregate the principal and interest accounts, nor did he keep an accurate record of the receipts or payments of interest. He did not keep a list of the securities belonging to the principal account nor a statement of their value. He relied upon his bank deposit book as evidence of all money collected and upon his check book and receipts for money disbursed, whether principal or interest. He did not know how either account stood except in a general way. His secretary, who assisted him in compiling his statement of July 14th, testified that she made it up from Royall's "bank book, his check book, his check stubs, cancelled checks, his bank statements and vouchers filed with the report, and loans to the different parties, from notes, deeds of trust, and the notes that had been paid off from the records in the Clerk's Office."

A firm of public accountants, who made a report for Mrs. Peters, stated that their report was based upon the same general information above, and that they were unable to verify the receipts and disbursements in detail.

Royall testified that he did not except to the commissioner's report of October 21, 1940, because he thought it was correct, believing that the allowance made to him by the commissioner for interest not earned would take care of all overpayments of interest and any encroachments upon the principal.

Upon consideration of the pleadings and the evidence, the trial court, on August 20, 1941, held that the exceptions of the receiver to the commissioner's report of March 20, 1941, and the petition of April 8, 1941, and its amendment of May 29, 1941, "all fail to set forth or show any matter which was not fully adjudicated by the decree entered in these causes on the 20th day of December, 1940, or any basis for the relief sought, * * * ." It thereupon overruled the exception of the receiver to the report of the commissioner in chancery filed March 20, 1941, and ratified, approved and confirmed that report. It dismissed the petition and amended petition of the receiver; directed that he restore to the principal funds in his hands, as receiver, the sum of $785.81, the amount of the shortage adjudged to exist; and forthwith pay to Mrs. Peters the sum of $408.14, interest adjudged to be owing to her; and further pay all of the costs of the proceeding.

From this last decree the receiver has appealed, making two principal contentions: (1) that the trial court erred in holding that the matters alleged in his petition of April 8, 1941, as amended, had been adjudicated in its decree of December 20, 1940; and (2) that the trial court erred in confirming the commissioner's report, charging him with a shortage in the principal and interest, because the shortage was based upon the assumption that he was liable for 6% interest on the principal, even though the principal did not earn it, and in order to pay such interest annually to

Mrs. Peters, he had to encroach upon the corpus of the estate, thereby reducing the principal and its earning power.

We are first faced with a motion to dismiss this appeal as being improvidently awarded. In connection with this motion, counsel for both parties devote much of their briefs and argument to the question, whether the decree of December 20, 1940, was final or interlocutory. Since a decision on this point is not necessary to the decision of this case, it will serve no useful purpose to enter a field covered by so many decisions of this court. See cases in note to Virginia Code, 1936, section 6337.

The principal and controlling question for our decision is whether or not the trial court, by its decree of August 20, 1941, erred in refusing to rehear the decree of December, 1940.

For the purpose of determining this issue, we will treat the petition of April 8, 1941, and its amendment of May 29, 1941, as a petition to rehear and not as a bill of review.

A bill of review applies only to a final decree. If the decree of December 20, 1940, was a final decree, a bill of review could not have been properly filed more than three months after its entry. Virginia Code, 1936, section 6337, as amended in 1938.

[■ A petition to rehear is a method of bringing error to the attention of the trial court before final decree, whether the error be of law or fact, or for the introduction of newly discovered evidence which was neither known nor accessible by the use of due diligence before the entry of the decree complained of. *Trevelyan's Adm'r* v. *Lofft*, 83 Va. 141, 1 S. E. 901; *Newberry* v. *Stuart*, 86 Va. 965, 11 S. E. 380; *Baker* v. *Watts*, 101 Va. 702, 44 S. E. 929.

In *Hurley* v. *Bennett*, 163 Va. 241, 176 S. E. 171, Mr. Justice Hudgins said:

■ "In *Downing* v. *Huston, etc., Co.*, 149 Va. 1, 9, 141 S. E. 134, 136, this is said: 'The petitioner's right to relief on such rehearing,' after the entry of an interlocutory decree, 'depends upon his ability to point out some error on the face of the record, or to show some legal excuse for his

failure to present his full defense at or before the time of entry of the decree which he seeks to have modified.'"

Receiver's petition of January 13, 1940, alleged that a shortage existed in the principal estate by reason of payments of interest to Mrs. Peters out of the funds of the principal, because he was unable to keep the whole of the principal funds invested at 6% at all times. The decree based thereon directed that any and all mistakes in the previous settlements of the receiver be corrected and that a true and correct adjustment of his accounts be ascertained. As a result, he was subsequently allowed credit for all interest for the time the funds in his hands were uninvested from 1924 to 1940.

The second petition alleged that the shortage was due to the fact that the overpayments to Mrs. Peters reduced the principal amount to be invested and thereby lessened its earning capacity. Other averments related to the alleged injustice of the decrees of 1924.

The issue presented by each petition was the correction of any and all mistakes in previous settlements of the receiver and the correct adjustment of his accounts. A shortage had been discovered, and it was sought to determine its cause. All proper corrections and adjustments of every nature were authorized. All of the evidence admissible under the second petition was admissible under the first. Every question which was raised in the second petition might have been litigated and determined under the first. All of the relief prayed for in the second petition was embraced in the prayer of the first. That the grounds for relief were based on different theories did not affect the issue. *Pickeral* v. *Federal Land Bank*, 177 Va. 743, 15 S. E. (2d) 82.

The appellant was not compelled to accept appointment as a receiver. It was the duty of the court to prescribe his duties and fix his compensation. If he thought the duties imposed an unreasonable burden upon him, he should have declined the appointment. If, during the course of his duties, he found the requirements of the decrees too difficult to perform, he should have asked the court to change

the requirements or tendered his resignation. He accepted the appointment, entered upon his duties, and for a period of sixteen years undertook to carry out the terms of the decrees. He made, filed, and settled his accounts during that entire period, with full recognition and acceptance of the provision that he was charged with investing the funds at 6%.

The duty of the receiver was that of a trustee. He should have acted with the same prudence and diligence that a reasonably prudent man uses in the exercise of his own affairs. The record discloses that the appellant failed to use such care and diligence. His petitions admit carelessness and improper performance of duties. By the exercise of due care, he should have known the condition of the estate at all times. He should have kept a true and accurate record of the corpus of the estate, a list of its property, and its earnings. He had no authority to pay out or expend the corpus in any manner or for any purpose, except under the direction of the court.

The receiver was charged with full knowledge of the status of his accounts. If he advancd, contrary to his instructions and authority, funds from the principal to cover interest due but not collected, such advances must be considered not in reduction of the principal, but merely as personal advances in anticipation of the future collection of the delinquent interest. The principal and its earning power remained unchanged. He must bear the consequnces of his own unauthorized acts. *Carr's Adm'r* v. *Morris*, 85 Va. 21, 6 S. E. 613; *Whitehead* v. *Whitehead*, 85 Va. 870, 9 S. E. 10.

The reports of the receiver's settlements were *prima facie* correct, and he has wholly failed to show wherein they were incorrect. The burden was upon him to show wherein the shortage was caused and that it was not due to his fault. Virginia Code, 1936, section 5429.

There is no merit in the contention that the receiver was misled and prejudiced by the decrees of September 18, 1924. The language of both decrees was simple and clear, hiding

nothing for future discovery. Notwithstanding this, he was relieved of all charge for unearned interest by the decree of December 20, 1940.

The appellant points out no error of law or fact on the face of the decrees which he sought to have reheard, nor does he show any legal excuse for his failure to present his full defense before the entry of the decree of December 20th. That decree, subject to the right of appeal, was conclusive as to every question decided and every other question which the parties might have litigated and determined within the issues, or the pleadings, or incident to the subject under litigation.

There must at some time be an end to controversies. Courts are for the purpose of furnishing a speedy end to litigation and not as a forum for endless contentions. Carelessness or after-thought on the part of litigants ought not to be allowed to affect the conclusiveness of a proceeding which has been determined after ample opportunity for a hearing of every question which might have been litigated.

The decree appealed from is affirmed.

*Affirmed.*